[No. 28817-0-III.   Division Three.   April 21, 2011.]

CHRISTOPHER M. FARMER, *Appellant*, v. BRADLEY M. DAVIS ET AL., *Respondents*.

*Douglas D. Phelps* (of *Phelps & Associates PS*), for appellant.

*Raymond W. Schutts* (of *Law Offices of Raymond W. Schutts*), for respondents.

¶1 SIDDOWAY, J. — Washington statutes permit service of a summons by delivery to someone other than the defendant (substitute service) if a copy is left at the house of the defendant's usual abode with a resident of suitable age and discretion. RCW 4.28.080(15). In this case, the only delivery of a summons for Bradley Davis that was timely accomplished was delivery to Mr. Davis's mother's home, where Mr. Davis had resided three years earlier, at the time of the auto accident giving rise to the action. The trial court granted summary judgment dismissing Mr. Farmer's complaint on grounds that undisputed evidence established that at the time of service, Mr. Davis's mother's home was not the house of his usual abode. Mr. Farmer appeals, alleging legal error by the trial court in failing to apply a required presumption in favor of his affidavits of service and in disregarding the rule of liberal construction announced in *Sheldon v. Fettig*, 129 Wn.2d 601, 609, 919 P.2d 1209 (1996). He also argues that the court abused its discretion in refusing to grant a continuance of the motion under CR 56(f) and in striking portions of his affidavits. Because the trial court properly applied the law to the facts of this case and did not abuse its discretion, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Christopher Farmer and Bradley Davis were involved in an automobile accident on April 21, 2006. On April 10, 2009, shortly before the running of the statute of limitations, Mr. Farmer filed suit against Mr. Davis for negligence. Relying on RCW 4.16.170, which tolls the statute of limitations for 90 days upon filing suit, Mr. Farmer's counsel undertook to serve Mr. Davis.

¶3 On May 27, 2009, a process server delivered a copy of the summons and complaint to 1520 Tombstone Street, Rathdrum, Idaho, the residence address for Mr. Davis set forth in the police report of the 2006 accident. The address turned out to be that of Laurie Davis, Mr. Davis's mother. On June 3, 2009, Mr. Davis's lawyer filed a notice of

appearance, reserving defenses for improper service and lack of jurisdiction.

¶4 Because Mr. Farmer was reportedly "[c]oncerned that the Defendant might attempt to deny [the May 27] service," Parker Gibson, an Idaho investigator, was hired to attempt personal service on Mr. Davis. Clerk's Papers (CP) at 38 (Br. in Resp. to Def.'s Mot. for Summ. J.). Mr. Gibson delivered a second copy of the summons and complaint to Ms. Davis at the Tombstone address on June 25.[1] Mr. Gibson's later declaration in opposition to summary judgment acknowledged that Ms. Davis refused to accept service and disavowed knowledge of her son's whereabouts. Mr. Gibson eventually identified a 13537 Halley Street address in Rathdrum as Mr. Davis's residence and personally served the summons and complaint there on July 16. Upon being served, Mr. Davis asked, "Isn't it too late?" to which Mr. Gibson responded, "No. It's not." CP at 80. Mr. Davis replied, "Oh. Alright, well I've been waitin'." CP at 80.

¶5 In October 2009, Mr. Davis, who had asserted affirmative defenses of insufficient service and the statute of limitations in his answer, moved for summary judgment dismissing Mr. Farmer's complaint. Mr. Davis's declaration in support of the motion stated that he had not lived at his mother's address on Tombstone since getting married on January 27, 2007; that upon getting married, he and his wife lived in an apartment in Coeur d'Alene, Idaho, until the spring of 2009, when they moved to their 13537 Halley Street residence; and that he had never authorized his mother or anyone else to accept service on his behalf. Ms. Davis's declaration in support of the motion stated that the first process server had handed her legal paperwork without stating what the papers were, and that she only realized in looking at them after the process server left that they were for a lawsuit pertaining to her son. She stated that her son was never mentioned by the process server and that she

---

[1] Our references to "Ms. Davis" are to Laurie Davis, Mr. Davis's mother, not "Jane Doe Davis," Mr. Davis's pseudonymously identified wife and codefendant.

made no representation she was accepting the papers on her son's behalf. She stated that she called her son about the papers but has no recollection that she ever gave them to him. Addressing the second delivery of papers, Ms. Davis stated that the process server approached her in her yard and stated he was there to serve papers for Bradley Davis; she responded that Bradley did not live at her home and repeatedly refused to accept the papers, stating that the process server needed to serve Bradley.

¶6 Mr. Farmer opposed the motion with affidavits of his lawyer and Mr. Gibson, recounting Mr. Gibson's information gathering and other efforts to locate and serve Mr. Davis. The affidavits stated that (1) Mr. Gibson contacted one of Ms. Davis's neighbors on Tombstone, who said that Mr. Davis had a boat and other personal items at the Tombstone address, that he was unsure where Mr. Davis lived, and that he did not want to get involved in helping Mr. Gibson; (2) the recorded message for the telephone at Ms. Davis's residence stated, "Hi, we're not home right now but if you'd like to leave a message for Laurie, press 1, Brian, press 2 or Bradley, press 3"; (3) Mr. Gibson's review of "computer services" identified the Tombstone address as that of Bradley Davis and Laurie Davis and identified Ms. Davis's residence telephone number as that of Bradley Davis as well; (4) Mr. Gibson visited an apartment on Emma Street in Coeur d'Alene, an address identified by a "computer service" as an alternative short-term residence for Mr. Davis, where he was told by an unidentified tenant that she had assumed a prior tenant's lease and had no information about Mr. Davis; and (5) Mr. Gibson determined that Mr. Davis received a speeding ticket on August 24, 2009 that was completed with the same Emma Street address in Coeur d'Alene where he had unsuccessfully attempted to locate Mr. Davis and despite reflecting an incorrect address, the ticket was timely paid. CP at 54, 59-60. From these facts and Mr. Davis's statements made to Mr. Gibson when served in July, the affidavits of Mr. Farmer's lawyer and Mr. Gibson expressed their conclusions that Mr. Davis received

actual notice of the lawsuit and thereafter evaded service, including by providing an outdated Emma Street address to the Idaho district court in connection with the speeding ticket. Mr. Farmer argued that Ms. Davis's home should be considered a second "house of usual abode" for Mr. Davis under the liberal construction of the substitute service statute required by *Sheldon*, 129 Wn.2d 601. He also argued that Mr. Davis should be judicially estopped from denying service because of his misrepresentation of the false Emma Street address evidenced by the August 2009 speeding ticket.

¶7 Mr. Davis moved to strike portions of Mr. Gibson's affidavit containing hearsay from third parties and "computer services," and moved to strike conclusions and opinions set forth in Mr. Gibson's affidavit and that of Mr. Farmer's lawyer. In reply, Mr. Davis submitted a declaration stating that when cited for speeding in August 2009, the officer completed the citation using the Emma Street address reflected on his driver's license and registration, albeit several months outdated by that time. Mr. Davis stated that he was focused on the citation for speeding and the $113 fine, not the erroneous address, and paid the ticket rather than contest it. With respect to the answering machine message at the Tombstone residence, Ms. Davis provided a declaration stating that both of her sons had moved out of her home prior to the first attempted service, that she now lived alone, and, "The only reason both boys' names continue to be mentioned on the message is because I feel safer if it is not readily apparent to callers that I live alone. Keeping the old answering machine message was my decision, not Brad's or Bryan's." CP at 98. Both Ms. Davis and Mr. Davis stated by reply declaration that notwithstanding the recorded message, the answering machine had never been used to take messages for Mr. Davis after he married and moved out.

¶8 At the December 17, 2009 hearing on the motions, the trial court, noting that no response had been received to the motion to strike, continued the hearing to early January so

that Mr. Farmer could respond. In continuing the hearing, she stated, "[T]his is not an opportunity for the plaintiff to submit anything new. The plaintiff has had their opportunity to respond." Report of Proceedings (RP) at 8. When she asked Mr. Farmer's counsel whether he understood, he responded, "I do." RP at 8.

¶9 On December 30, 2009, Mr. Farmer nonetheless filed a motion seeking a continuance of the summary judgment motion pursuant to CR 56(f), in order to depose Mr. Davis and his mother. The affidavit in support of the motion provided only conclusory arguments about "fair[ness]" and a need for a "complete record" in explaining the asserted need for the additional discovery. CP at 107.

¶10 At the continued hearing, the trial court granted Mr. Davis's motion to strike, denied Mr. Farmer's motion to continue, and granted summary judgment dismissing Mr. Farmer's complaint. In denying the motion for a continuance, the court observed that Mr. Farmer did not make the required showings to justify the continuance.

¶11 Mr. Farmer timely appealed, assigning error to the trial court's (1) asserted failure to apply a required presumption of correctness to his affidavits of service, (2) granting Mr. Davis's motion to strike and denying his CR 56(f) motion for a continuance, (3) concluding that process was insufficient as a matter of law where Mr. Davis received actual notice and had an opportunity to defend, and (4) concluding that process was insufficient as a matter of law notwithstanding his proffered evidence that the Tombstone address was Mr. Davis's house of usual abode.

## ANALYSIS

### I.

¶12 Mr. Farmer first argues that the court erred in applying the usual summary judgment burdens and standard, viz., asking only whether Mr. Davis, as the moving party, had demonstrated that there was no genuine issue as

to any material fact and that he was entitled to judgment as a matter of law. CR 56(c). Mr. Farmer argues that the court should instead have applied a presumption that his affidavits of service, being regular in form and substance, were correct, and should have held Mr. Davis, in challenging service, to a burden of proving improper service by clear and convincing evidence. He relies on *In re Dependency of A.G.*, 93 Wn. App. 268, 277, 968 P.2d 424 (1998); *Allen v. Starr*, 104 Wash. 246, 247, 176 P. 2 (1918); and *Vukich v. Anderson*, 97 Wn. App. 684, 687, 985 P.2d 952 (1999) (quoting *Woodruff v. Spence*, 88 Wn. App. 565, 571, 945 P.2d 745 (1997), *review denied*, 135 Wn.2d 1010 (1998)). Br. of Appellant at 11-12.

¶13  The cases cited by Mr. Farmer for this presumption and heightened burden of proof all involve postjudgment attacks on a judgment. In that context, Washington cases have long held that considerations of the regularity and stability of judgments entered by the court require that *"after a judgment has been rendered upon proof made by the sheriff's return,* such judgment should only be set aside upon convincing evidence of the incorrectness of the return." *Allen*, 104 Wash. at 247 (emphasis added). Other cases cited by Mr. Farmer also involve challenges to existing judgments. *See Dependency of A.G.*, 93 Wn. App. at 277 (imposing burden of clear and convincing showing "on the person attacking service," but in the context of a motion to set aside a judgment, relying on *Leen v. Demopolis*, 62 Wn. App. 473, 478, 815 P.2d 269 (1991) (itself resolving a postjudgment challenge to service), *review denied*, 118 Wn.2d 1022 (1992)); *Vukich*, 97 Wn. App. at 687 (addressing motion to set aside order of default and judgment and quoting *Woodruff*, 88 Wn. App. at 571, for its holding that " '[a] facially correct return of service is presumed valid and, *after judgment is entered*, the burden is on the person attacking the service to show by clear and convincing evidence that the service was irregular' " (emphasis added)); *Woodruff*, 88 Wn. App. at 571 (itself addressing a motion to set aside judgment, citing *Miebach v. Colasurdo*, 35 Wn. App. 803, 808, 670 P.2d 276 (1983) (addressed to

vacating a default judgment and citing, as authority, *Allen*, 104 Wash. at 247), *aff'd in relevant part*, 102 Wn.2d 170, 685 P.2d 1074 (1984)).

¶14 Applying a presumption and higher evidentiary burden in cases where a party seeks to vacate an existing judgment accords with the development of the common law of judgments. It was a rule in common law courts that a judgment appearing to be valid on its face could not be shown to be invalid by proof contradicting the record of the action in which the judgment was rendered. RESTATEMENT (SECOND) OF JUDGMENTS § 77 cmt. a (1982). The purpose of the common law rule was to "constitute the judgments to which it applied incontestable muniments of the rights they purported to determine." *Id.* The modern rule is that a judgment may be impeached by evidence that contradicts the record in the action. *Id.* However, to protect judgments from contrived attack at a time when the attack may be hard to contradict if the memory of the plaintiff's witness to the service has faded, the party challenging a judgment must produce clear and convincing evidence. *Id.* § 77(2) & cmt. b.

¶15 Mr. Farmer offers no principled reason, nor can we conceive of one, to apply a presumption or a heightened burden of proof where no judgment is being attacked. In this case, Mr. Davis appeared in the action and put Mr. Farmer on notice that sufficiency of process was at issue by affirmative defense, as provided by CR 12(b)(5). Federal cases addressing the procedure for resolving motions to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure uniformly hold that the plaintiff bears the burden of demonstrating the validity of its service. *See, e.g.*, *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006); *Suegart v. U.S. Customs Serv.*, 180 F.R.D. 276, 278 (E.D. Pa. 1998); *Zhi Chen v. Dist. of Columbia*, 256 F.R.D. 263, 266 (D.D.C. 2009); *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003). While Mr. Farmer's affidavits of service could be pointed to by him for summary judgment purposes

as evidence of the admissible matters they set forth,[2] they warrant no special weight or treatment under CR 56.[3]

## II.

¶16  Mr. Farmer next argues that the trial court abused its discretion in (1) denying his request for a continuance to conduct depositions of Mr. Davis and his mother and (2) granting Mr. Davis's motion to strike portions of the declarations of Mr. Gibson and Mr. Farmer's lawyer.

■ ¶17  CR 56(f) provides that "the court . . . *may* order a continuance to permit affidavits to be obtained or depositions to be taken." (Emphasis added.) Where the decision of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion. Discretion is abused when it is based on untenable grounds or is manifestly unreasonable. *In re Det. of Schuoler*, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986).

■■ ¶18  CR 56(f) provides that the court may order a continuance to allow a nonmoving party to obtain discovery needed to respond to the motion "[s]hould it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition." The rule has been construed to require that the nonmoving party show why he is unable to respond without the extension and what essential facts he needs to secure. The trial court may deny a motion for continuance if

(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting

---

[2] The vast majority of cases discussing the presumed validity of affidavits of service and the burden of countervailing them with clear and convincing evidence involve challenges to existing judgments. To the extent that other decisions may have applied the presumption and burden to disputes that were raised and resolved prior to judgment, we decline to follow them. *See, e.g., State ex rel. Coughlin v. Jenkins*, 102 Wn. App. 60, 7 P.3d 818 (2000); *Witt v. Port of Olympia*, 126 Wn. App. 752, 109 P.3d 489 (2005); *Streeter-Dybdahl v. Nguyet Huynh*, 157 Wn. App. 408, 236 P.3d 986 (2010), *review denied*, 170 Wn.2d 1026, 249 P.3d 182 (2011).

[3] By resolving Mr. Farmer's assignment of procedural error on this basis, we do not mean to suggest that Mr. Davis's evidence would not have been sufficient even applying a presumption in Mr. Farmer's favor and a heightened burden of proof.

party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.

*Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989).

¶19 Mr. Farmer's affidavit in support of his motion states only that additional time is needed to depose Ms. Davis and Mr. Davis to determine Mr. Davis's usual abode. Yet declarations had already been provided by both, stating unequivocally, and with supporting facts, why the Tombstone address was not the house of Mr. Davis's usual abode. Mr. Farmer offered no explanation of what potentially contradictory evidence he hoped to elicit from the two.

¶20 This spare showing was also presented over two months after the motion for summary judgment was filed and two weeks after Mr. Farmer's counsel was told by the trial court, and acknowledged, that she would give him time to respond to the motion to strike, but with respect to the motion for summary judgment, "You cannot raise anything new." RP at 9. No explanation was provided as to why Mr. Farmer had not noted the depositions at an earlier time or, if there had been obstacles to taking the desired depositions, why he had not made an earlier continuance motion. The trial court was clearly within its discretion in denying a continuance.

¶21 We also review the trial court's decision on the motion to strike for abuse of discretion. *King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994).

¶22 CR 56(e) requires that affidavits opposing summary judgment shall be made on personal knowledge and set forth such facts as would be admissible in evidence. Mr. Davis's motion to strike challenged hearsay offered by Mr. Farmer's affidavits: statements made to Mr. Gibson by Ms. Davis's neighbor, by an unidentified female tenant at the Emma Street apartment, by "Josh," a male tenant at the Emma Street apartment; and data obtained by him from unidentified "computer services." Mr. Davis also moved to

strike opinions and conclusions expressed by Mr. Gibson and Mr. Farmer's lawyer based on that hearsay, and conjecture by Mr. Gibson as to what Mr. Davis and Ms. Davis intended by their actions. All of the evidence challenged by Mr. Davis appears to be inadmissible as hearsay, improper opinion, and/or speculation. ER 602, 701, 802.

¶23 Mr. Farmer fails to offer any argument why the stricken evidence was admissible. The section of his brief devoted to this assignment of error does not identify any particular portion of the affidavits he contends was improperly stricken or why. Br. of Appellant at 13-14. An appellate brief should contain argument in support of every issue presented for review, including citations to legal authority and references to the relevant parts of the record. RAP 10.3(a)(6). Lacking either, we will not consider this issue. *State v. Tinker*, 155 Wn.2d 219, 224, 118 P.3d 885 (2005) (without adequate, cogent argument and briefing, appellate courts should not consider an issue on appeal).

### III.

¶24 Mr. Farmer argues next that the trial court's dismissal of his complaint is contrary to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), inasmuch as the evidence is uncontested that Mr. Davis was notified of the first delivery of pleadings to his mother and had the opportunity to appear and defend against the action. Where the relevant facts are undisputed and the parties dispute only the legal effect of those facts, the standard of review is de novo. *Hogan v. Sacred Heart Med. Ctr.*, 101 Wn. App. 43, 49, 2 P.3d 968, *review denied*, 142 Wn.2d 1014 (2000).

¶25 In Washington, proper service of process must not only comply with constitutional standards but must also satisfy the requirements for service established by the legislature. The fact that the due process requirements of *Central Hanover* have been met, standing alone, is not enough. *Thayer v. Edmonds*, 8 Wn. App. 36, 40, 503 P.2d

1110 (1972) ("beyond due process, statutory service requirements must be complied with in order for the court to finally adjudicate the dispute"), *review denied*, 82 Wn.2d 1001 (1973); *Powell v. Sphere Drake Ins. PLC*, 97 Wn. App. 890, 899, 988 P.2d 12 (1999) ("Service of process is sufficient only if it satisfies the minimum requirements of due process and the requirements set forth by statute."); *Gerean v. Martin-Joven*, 108 Wn. App. 963, 971, 33 P.3d 427 (2001) (plaintiff's general observation that constitutional due process was satisfied by method of service "ignores specific statutory requirements for effecting service on an individual defendant in Washington"), *review denied*, 146 Wn.2d 1013 (2002).

¶26 The statutory authorization of substitute service, provided by RCW 4.28.080(15), requires "leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein." The trial court properly recognized that Mr. Farmer's showing that due process requisites were satisfied, while necessary, was not sufficient to avoid summary judgment. There was no error.

IV.

¶27 Finally, Mr. Farmer argues that the trial court wrongly concluded that he did not present sufficient evidence that the Tombstone residence was the house of Mr. Davis's usual abode at the time of the attempted service in May and June 2009 to avoid summary judgment. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). All the evidence and reasonable inferences therefrom are considered in a light most favorable to the nonmoving party. *Schaaf v. Highfield*, 127 Wn.2d. 17, 21, 896 P.2d 665 (1995). This court reviews an order on summary judgment de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004).

¶28 Mr. Farmer argues that if "house of usual abode" is properly and liberally construed to effectuate service and

uphold the jurisdiction of the court as required by *Sheldon*, then service on Ms. Davis was sufficient, and it was error for the trial court to conclude otherwise. In *Sheldon*, the court explicitly abandoned strict construction of service of process statutes in favor of the trend toward liberal construction reflected in its more recent decisions, such as *Martin v. Meier*, 111 Wn.2d 471, 760 P.2d 925 (1988) (construing motorist statute as permitting service even when the defendant has not literally "departed" from the state) and *Wichert v. Cardwell*, 117 Wn.2d 148, 812 P.2d 858 (1991) (allowing substitute service on defendant's stepdaughter at defendant's home even though she was not literally "resident" in the home). *Sheldon* involved attempted service of process on an adult defendant, Sharon Fettig, at her parents' Seattle home. Ms. Fettig had moved to Chicago for flight attendant training eight months prior to the attempted service, but thereafter maintained a number of formal and informal connections to her parents' Seattle residence.

¶29 The *Sheldon* court pointed out that in *Wichert*, it held that statutory provisions permitting substitute service should be construed to uphold the underlying purposes of the statute, which it defined as (1) providing means to serve defendants in a fashion reasonably calculated to accomplish notice and (2) allowing injured parties a reasonable means to serve defendants. *Sheldon*, 129 Wn.2d at 608 (citing *Wichert*, 117 Wn.2d at 151-52). Applying liberal construction to effectuate service, the court noted that "there is no hard and fast definition of the term 'house of usual abode'" and approved the reasoning of this court that " '[u]sual place of abode must be taken to mean such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for defendant to appear.' " *Id.* at 610 (internal quotation marks omitted) (quoting *Sheldon v. Fettig*, 77 Wn. App. 775, 781, 893 P.2d 1136 (1995)).

¶30 The *Sheldon* court agreed with this court that Ms. Fettig had two "usual places of abode," one being her

parents' home in Seattle, citing evidence that she used her parents' address as her residence for purpose of her registration to vote, for her car registration, on her car's bill of sale, with her car insurer, and when cited for speeding. She returned to Seattle frequently when between flight assignments. *Id.* The court held that her parents' home was reasonably regarded as the place where Ms. Fettig was most likely to receive notice of the pendency of a lawsuit in light of her father's demonstrated involvement in other business and legal matters on her behalf. *Id.* at 611. While concluding that the foregoing facts supported the sufficiency of service on Ms. Fettig, however, the court also observed that "we could well imagine fact patterns in which serving a defendant at her parents' when she lives elsewhere would not constitute sufficient service of process" and "we think that most people generally maintain only one house of usual abode for service of process purposes." *Id.*

¶31 The evidence before the trial court as to Mr. Davis's situation at the time service was attempted at the Tombstone address is distinguishable from the factors cited in *Sheldon* in every material respect. There was no admissible evidence that Mr. Davis was continuing to use his old Tombstone address for any purpose. Undisputed evidence established that since getting married, he had not lived or stayed overnight at his mother's home. There was no evidence that Mr. Davis relied on his mother to handle business or legal matters on his behalf. While a roughly contemporaneous speeding citation was issued to Mr. Davis at an outdated address, the outdated address was for his and his wife's former apartment, not his mother's residence on Tombstone.

¶32 As we observed in *Gerean*, 108 Wn. App. at 972, "Liberal construction does not mean abandoning the statutory language entirely." The facts of this case are more like those in *Lepeska v. Farley*, 67 Wn. App. 548, 833 P.2d 437 (1992) and *Gerean* than they are those in *Sheldon*. In *Lepeska* and *Gerean*, the fact that a defendant resided with parents at the time of an auto accident and later received

actual notice of later delivery of a summons and complaint to that address was not sufficient substitute service. In this case, too, viewing the evidence in the light most favorable to Mr. Farmer and liberally construing RCW 4.28.080(15), there is no evidence raising any genuine issue that the Tombstone address was a second "house of usual abode" for Mr. Davis at the time of the attempted service.

¶33 Affirmed.

KULIK, C.J., and BROWN, J., concur.

Reconsideration denied May 19, 2011

Review denied at 172 Wn.2d 1019 (2011).