# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

LAURIANE NARIN ,

Appellant,

v.

MOHAMED S. ABUBAKAR; and JANE DOE, husband and wife, individually and in the marital community comprised thereof,

Respondent.

DIVISION ONE

No. 78923-6-I

UNPUBLISHED OPINION

FILED: November 12, 2019

DWYER, J. — Lauriane Narin appeals from the trial court's order dismissing her personal injury action against Mohamed Abubakar based on her failure to effect service of process within the statutory limitation period. The trial court neither abused its discretion by denying Narin's motion to continue the summary judgment hearing nor erred in striking portions of the evidence Narin submitted in response to the motion. And because Narin failed to accomplish valid service of process when she caused to be delivered a copy of the summons and complaint to Abubakar's brother at a place where Abubakar did not reside, the trial court properly granted summary judgment. We affirm.

I

On August 7, 2014, Lauriane Narin and Mohamed Abubaker were involved in an automobile collision in Seattle. Abubakar provided the investigating officer with a Seattle address on 30th Avenue S., which was his

mother's residence and the location where Abubakar had his mail delivered at the time.

Three days before the statute of limitations expired, on August 4, 2017, Narin filed a personal injury action against Abubakar. On August 16, counsel for Abubakar filed a notice of appearance, "reserving all defenses including but not limited to defects in jurisdiction and service of process."

Narin twice unsuccessfully attempted to serve Abubakar with legal process in September 2017.[1] Then, on September 28, 2017, Narin served Abubakar by delivering a copy of the summons and complaint to his brother at a residence located at 3011 S. Holly Street, in Seattle. According to the declaration of service, the individual who accepted the legal documents was an unidentified male of Middle Eastern descent with an accent, who was a resident of the home and Abubakar's "roommate."

Three weeks later, before the 90-day period for service expired, Abubakar answered the complaint, and asserted insufficient service of process as a defense.[2]

Several months later, Abubakar filed a motion for summary judgment, seeking dismissal of the complaint on the ground that Narin failed to accomplish valid service within 90 days of filing her complaint, as required by RCW 4.16.170. Abubakar filed a brief supportive declaration stating that he never lived at the S.

---

[1] Narin first attempted to serve Abubakar on September 24 at the 30th Avenue S. address identified in the police report. The next day, on September 25, Narin attempted to serve Abubakar at a residence on SE Ramona Street in Portland, Oregon. Abubakar's mother resided at that address and informed the process server that Abubakar did not live there and only visited on occasion.

[2] See RCW 4.16.170 (tolling the statute of limitations for 90 days from the date of filing the complaint).

Holly Street residence and that, since 2014, he has resided at an apartment on Martin Luther King Jr Way S. (MLK) in Seattle. Abubakar provided no corroborative evidence, apart from a copy of his Washington driver's license, issued in December 2016, listing the MLK apartment as his address.

Narin opposed the motion with declarations of the process server and two investigators employed by ABC Legal Services, the entity she retained to locate and serve Abubakar. The ABC employees described their investigation into Abubakar's home address and referenced certain documents they relied upon, including an attached document identified as an "Accurint report."

Abubakar asked the court to strike portions of the testimony of the ABC employees and the Accurint report. Narin filed a motion seeking leave to supplement the evidence and to continue the hearing. Without ruling on either of these motions, the trial court denied the motion for summary judgment without a hearing.

Approximately two months after the court entered its order, defense counsel informed plaintiff's counsel of her intent to file another motion for summary judgment with additional documentation to establish Abubakar's residency.

In June 2018, approximately five months after the court denied his first motion, Abubakar filed a second motion for summary judgment. In the declaration he filed in support of the motion, Abubakar explained that at the time of the collision, he was living with friends, but was not named on a lease. Abubakar said that, since November 2014, the MLK apartment had been his

3

permanent residence. He further stated, "[t]his address is where my mail is delivered, where I prepare meals and sleep each night, and where I spend time with friends and family." He said that for a period of a few months in the summer of 2015, his girlfriend and children lived with him at the MLK apartment.

Abubakar explained that, at the time of the attempted service in September 2017, three of his brothers were living at the S. Holly Street residence, including Fadil, who accepted documents from the process server.[3] According to Abubakar's declaration, Fadil has some "learning disabilities," does not read well, and did not deliver any legal documents to him.

Abubakar attached several exhibits to his declaration, including copies of lease documents establishing that he had rented the MLK apartment continuously from November 14, 2014. He also submitted copies of electricity bills in his name, car payment bills, a Washington Department of Licensing vehicle registration certificate issued in February 2017, a copy of his Washington driver's license, and a copy of a 2016 employment application for a position Abubakar held in 2016 and 2017. All of these documents referenced the MLK apartment as Abubakar's home address.

Abubakar also supplied Fadil's declaration, who confirmed that Abubakar had never lived at the S. Holly Street residence. Fadil stated that he remembered the delivery of "legal papers," but understood that the documents were for another brother, Ahmed, who also resided at the S. Holly Street residence. Fadil said that his native language is Somali, and that he has

---

[3] We refer to Abubakar's brothers by first names for clarity.

4

"learning disabilities and cannot read." Fadil denied telling the process server that Abubakar lived with him.

Narin again opposed the motion, relying on the evidence that she presented in her response to Abubakar's first summary judgment motion. She argued that summary judgment was inappropriate because Abubakar was "at least associated" with the S. Holly Street address and there were insufficient facts to conclude that service at that address was invalid. Alternatively, Narin requested a continuance under CR 56(f), arguing that, in light of the new evidence, she should have an opportunity to depose "several key witnesses," including Abubakar, his brothers, and ABC employees and investigators.

Prior to the hearing, Abubakar again moved to strike portions of the declarations of the ABC employees and the process server.

Following a hearing, the court entered an order granting Abubakar's motion to strike and a separate order denying Narin's motion for a continuance and granting Abubakar's motion for summary judgment. The court later denied reconsideration of both orders.

Narin appeals, challenging the trial court's decisions (1) denying her motion to continue, (2) granting the motion to strike and (3) granting Abubakar's summary judgment motion dismissing her lawsuit.

II

Narin contends that the court abused its discretion by denying her CR 56(f) motion to continue the summary judgment hearing to allow her to conduct discovery.

5

Under CR 56(f), the court may order a continuance to allow a nonmoving party to obtain discovery needed to respond to the motion "[s]hould it appear from the affidavits of a party opposing the motion that, for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition." We review a trial court's ruling on a CR 56(f) motion for abuse of discretion. Bavand v. OneWest Bank, FSB, 196 Wn. App. 813, 822, 385 P.3d 233 (2016). The trial court may deny the motion for a continuance if: "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact." Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989).

When a party requests a continuance merely to seek information already provided by a declaration, the trial court does not abuse its discretion by denying the request. Farmer v. Davis, 161 Wn. App. 420, 431, 250 P.3d 138 (2011). The trial court granted summary judgment to the defendants in Farmer because the plaintiff failed to serve a copy of the summons upon a person of suitable age and discretion at the defendant's place of usual abode. 161 Wn. App. at 423. On appeal, Farmer challenged the denial of his motion for a continuance to allow him to depose Davis and Davis's mother regarding Davis's usual abode. Farmer, 161 Wn. App. at 430. However, both individuals had already provided declarations that unequivocally stated, with supporting facts, that the place of service had not been Davis's usual abode for more than two years before the

attempted service. Farmer, 161 Wn. App. at 431. The appellate court upheld the trial court's denial of the motion to continue. Farmer, 161 Wn. App. at 431.

Narin contends that, unlike the plaintiff in Farmer, she made the required showing to justify a continuance. We disagree. Narin's counsel stated that if the matter were continued, he expected to receive responses to outstanding interrogatories and to depose Abubakar and Fadil. Counsel did not identify any information that outstanding discovery responses would provide that was relevant to the issue of service. And when the court pointed out that both Abubakar and Fadil had provided definitive declarations with regard to Abubakar's usual place of abode, counsel suggested that depositions would allow him to ask "follow-up questions" and to "go deeper." The only specific area of inquiry Narin's counsel mentioned was whether Abubakar had ever used the S. Holly Street address to apply for credit.

These facts are analogous to those in Farmer because Narin requested a continuance for the primary purpose of deposing witnesses who had already provided unequivocal declarations about Abubakar's usual abode. Farmer, 161 Wn. App. at 431. Like the plaintiff in Farmer, Narin offered nothing, beyond speculation, to suggest that she might be able to elicit "potentially contradictory evidence" from those witnesses. 161 Wn. App. at 431. And, as the trial court here pointed out, any evidence that Abubakar used the address for a discrete purpose, such as a credit application, would not undermine the evidence establishing that the MLK apartment was Abubakar's usual abode for purposes of service.

7

Narin also maintains that she demonstrated a good reason for the delay in obtaining the evidence because defense counsel prevented her from deposing Abubakar and refused to engage in discovery. But there was no evidence before the court to indicate that Narin took any steps to take Abubakar's deposition, or made an express request to do so, and that opposing counsel failed to cooperate. Defense counsel's declaration provides:

> At no time during the course of this litigation has plaintiff's counsel ever requested I make Mr. Abubakar available for deposition. Plaintiff's counsel has never noted the deposition of Mr. Abubakar or any other witness. Plaintiff's counsel has never taken any steps to compel defendant's answer to plaintiff's discovery requests nor has counsel propounded any other written discovery regarding the service of process defense.

No evidence in the record contradicts this testimony. This is so even if we were to consider the evidence Narin submitted to support her motion for reconsideration and the untimely declaration of Narin's former counsel. Evidence that plaintiff's counsel once brought up the issue of Abubakar's deposition in a conversation with defense counsel does not establish that defense counsel refused to make her client "available" for deposition. At the summary judgment hearing, Narin's counsel admitted that, despite being on notice of the likelihood of a second motion supported by additional evidence, other than "reaching back out to ABC," he had not engaged in any discovery in the five-month period following the court's denial of the first motion. As in Farmer, Narin failed to note any depositions while the case was pending and "if there had been obstacles to taking the desired depositions," failed to explain why she had not moved for a continuance earlier. 161 Wn. App. at 431.

8

Next, Narin cites Coggle v. Snow, 56 Wn. App. 499, 508, 784 P.2d 554 (1990), to argue that the trial court failed to fully appreciate that justice is the "primary consideration" in ruling on a motion for a continuance and inappropriately relied, to some extent, on the shortcomings of her counsel. Again, we disagree. In Coggle, a medical negligence case, the trial court abused its discretion by denying a motion for a continuance when the plaintiff's new counsel had insufficient time to rebut a summary judgment motion. 56 Wn. App. at 508. There was a good reason for the delay because Coggle's first counsel retired and new counsel began representing Coggle only one week after the opposing party filed the motion for summary judgment. Coggle, 56 Wn. App. at 508. Significantly, this court held that Coggle had met the other criteria for a continuance by specifically identifying the evidence he sought, an affidavit from the treating physician, and explaining how that evidence would rebut the key defense expert's testimony. Coggle, 56 Wn. App. at 508.

The facts here are not comparable to those in Coggle. And Narin's suggestion that the trial court failed to make justice its primary consideration or unfairly penalized her for her counsel's dilatory conduct is unwarranted. The court carefully and thoroughly analyzed Narin's request, recognizing the consequences of denial. In this case, justice simply did not require continuing the summary judgment hearing to allow further discovery when Narin failed to meet her obligation to identify information she would obtain that would raise a genuine issue of material fact.[4]

---

[4] We also reject Narin's contention that a continuance was warranted because she was caught "by surprise" when the court granted the defense motion to strike and thereby reversed its

9

III

Narin next challenges the court's decision to strike portions of the evidence she submitted in response to the summary judgment motion.

"A court cannot consider inadmissible evidence when ruling on a motion for summary judgment." Dunlap v. Wayne, 105 Wn.2d 529, 535, 716 P.2d 842 (1986). Under CR 56(e), "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Although a trial court's ruling on a motion to strike is generally reviewed for abuse of discretion, when a motion to strike is made in conjunction with a motion for summary judgment, the standard of review is de novo. Southwick v. Seattle Police Officer John Doe No. 1, 145 Wn. App. 292, 297, 186 P.3d 1089 (2008).

Narin challenges the trial court's decision to strike the declaration of former counsel, filed the day before the summary judgment hearing.[5] She argues that the trial court abused its discretion by striking the evidence as untimely without first applying the factors set forth in Burnet v. Spokane Ambulance, 131 Wn.2d 484, 933 P.2d 1036 (1997). See Keck v. Collins, 184 Wn.2d 358, 368-69, 357 P.3d 1080 (2015) (Burnet test applies to untimely

---

prior ruling on admissibility. She did not make this argument at the hearing or on reconsideration. Narin had notice of Abubakar's renewed evidentiary objections. The trial court's failure to rule on the first motion to strike when it denied Abubakar's initial summary judgment motion was not a prior determination of admissibility.

[5] The court's order granting the motion to strike does not refer to the attorney's declaration but the court orally granted the motion at the summary judgment hearing.

affidavits submitted in response to a summary judgment motion when the affidavits are germane to the factual issues raised by the motion).

The declaration in question was not relevant to the factual issue before the court on summary judgment—i.e., whether Narin accomplished valid service within the statutory limitation period. The declaration related only to Narin's request for a continuance and her explanation as to why she had not already deposed defense witnesses. Moreover, Narin fails to allege, much less establish, that she was prejudiced by the trial court's ruling. See Vant Leven v. Kretzler, 56 Wn. App. 349, 353-54, 783 P.2d 611 (1989) (when affidavits submitted by party seeking a CR 56(f) continuance are insufficient to establish a good reason for delay in obtaining desired evidence, denial of continuance is within the trial court's discretion). As explained in the preceding discussion, the attorney's declaration testimony that the attorney "discussed" Abubakar's deposition with defense counsel does not demonstrate that Narin sought to depose the defendant and was prevented from doing so.

Narin also challenges the court's decision to strike the "Accurint report" attached to the declarations of ABC investigator Sean Woods.[6] The document includes only a "LexID" number to identify the source of the information.[7] Abubakar moved to strike the exhibit as unauthenticated.

---

[6] Narin submitted two declarations of Sean Woods, dated one day apart. The challenged exhibit is attached to both.

[7] The Lexis Accurint database is used to locate people and businesses by reviewing "83+ billion public records." https://www.lexisnexis.com/en-us/products/accurint-for-legal-professionals.page (last visited October 28, 2019).

On appeal, Narin contends that the exhibit is admissible under ER 803(17). ER 803(17) is an exception to the hearsay rule that allows admission of "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations." But Narin did not rely on this provision as a basis to admit the evidence in the trial court. Absent manifest constitutional error, we decline to consider arguments raised for the first time on appeal. See RAP 2.5(a). But even if Narin had preserved the issue, and we assume the exhibit was properly authenticated and admissible under ER 803(17),[8] Narin was not prejudiced by the court's ruling because the evidence fails to raise a genuine issue of material fact about the validity of service.

The report lists 15 addresses with an apparent connection to the defendant's name. First on the list is Abubakar's mother's Portland residence, which, as the parties agree, is not Abubakar's usual abode. Second on the list is the MLK address where Abubakar resides, with a corresponding date range of January 2015 to August 2017. The S. Holly Street address is fourth on list with a single corresponding date of March 2017. The Accurint report does not reveal the underlying documents or data that provided the basis for connecting Abubakar's name to any of the addresses listed. Without that information, the document creates no inference that the S. Holly Street residence (or any other listed address for that matter) was Abubakar's usual abode at the time of service

---

[8] See U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec., Inc., 205 F. Supp. 3d 386, 441 (S.D.N.Y. 2016) (finding evidence from Accurint database to be admissible under parallel federal rule).

or cast doubt on the evidence submitted by Abubakar in support of his motion for summary judgment.

As to the declarations of the ABC investigators, Narin claims, without further elaboration, that "there is a difference between a hearsay statement and non-hearsay proffers." This assertion fails to adequately address the testimony or basis for the motion to strike. For instance, in addition to describing his search of "third party credit header data," Joe Fetherolf states in the stricken portion of his declaration that "Credit header records reflect that 3011 S Holly St., Seattle 98108 is the defendant's most recent address in the State of Washington." Narin fails to explain why this testimony is a "non-hearsay proffer," as opposed to a hearsay statement offered to prove the matter asserted. See ER 801(c). And Narin provides no reasoned argument that would allow us to conclude that Woods's testimony about the content of certain Oregon and Washington records is not hearsay because physical documents do not exist or because ABC does not have access to them. We decline to further address this claim.[9]

IV

Finally, Narin argues that service at the S. Holly Street address satisfied either RCW 4.28.080(16) or (17) and it was error for the trial court to conclude otherwise. Thus, she contends that the order granting summary judgment must be reversed.

---

[9] With respect to the declaration of the process server, we reject Narin's contention that the court did not strike any part of his testimony. While the handwritten portion of the order does not reference the process server's declaration, the order clause makes it clear that the court granted Abubakar's request to strike paragraphs four and seven of his declaration.

We review the grant of a motion for summary judgment de novo. This court engages in the same inquiry as the trial court. Benjamin v. Wash. State Bar Ass'n, 138 Wn.2d 506, 515, 980 P.2d 742 (1999). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Clements v. Travelers Indem. Co., 121 Wn.2d 243, 249, 850 P.2d 1298 (1993); CR 56(c).

A personal injury plaintiff must commence suit within three years. RCW 4.16.080(2). She may do so by filing the complaint or serving the summons. RCW 4.16.170. If she commences by filing, then she must serve the defendant personally within 90 days from the date of filing. RCW 4.16.170.

Among other methods, a plaintiff can personally serve a defendant by (1) delivering a copy of the summons to the defendant, or (2)(a) leaving a copy of the summons at the defendant's usual abode (b) with a person of suitable age and discretion (c) then resident therein. RCW 4.28.080(16). Service under the latter alternative, commonly called "abode" or "substitute" service must satisfy all three elements. Sheldon v. Fettig, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996); Gerean v. Martin-Joven, 108 Wn. App. 963, 969, 33 P.3d 427 (2001).

The term "usual abode" is liberally construed and refers to the "'center of one's domestic activity [such that] service left with a family member is reasonably calculated to come to one's attention.'" Sheldon, 129 Wn.2d at 610 (quoting Sheldon v. Fettig, 77 Wn. App. 775, 781, 893 P.2d 1136 (1995)). While "most people generally maintain only one house of usual abode," our Supreme Court

14

has held that "under certain circumstances a defendant can maintain more than one house of usual abode." Sheldon, 129 Wn.2d 611.

Narin concedes that the exhibits submitted by Abubakar establish beyond dispute that he resides at the MLK apartment. Nevertheless, she claims the evidence fails to explain his connection to the S. Holly Street residence and does not foreclose the possibility that, like the defendant in Sheldon, Abubakar maintains more than one usual abode. See Sheldon, 129 Wn.2d at 611.

Sheldon involved attempted service of process on an adult defendant, Sharon Fettig, at her parents' Seattle home. Sheldon, 129 Wn.2d at 606. Fettig had moved to Chicago for flight attendant training eight months prior to the attempted service, but thereafter maintained a number of formal and informal connections to her parents' Seattle residence. Sheldon, 129 Wn.2d at 604-05. As Sheldon makes clear, the usual abode inquiry turns on indicia of domestic activity and use of an address for purposes such as voting, car registration, car insurance, and the receipt of mail. See, e.g., Sheldon, 129 Wn.2d 610-11. It also depends on factors that logically establish the center of domestic activity, including basic concepts such as where the defendant sleeps and eats and the frequency of visits. See, e.g. Sheldon, 129 Wn.2d at 610, 612.

The use of a particular address "for a limited purpose is not a critical factor in determining a center of domestic activity." Streeter–Dybdahl v. Nguyet Huynh, 157 Wn. App. 408, 414, 236 P.3d 986 (2010). In Streeter-Dyblahl, service of a summons and complaint on a person, other than the defendant, at a residence where the defendant no longer lived and only visited occasionally to pick up mail,

was invalid. 157 Wn. App. at 415. In that case, although the Department of Licensing listed the defendant's former Seattle residence as her current address and she kept a special box there for mail, there was no probative evidence of domestic activity sufficient to conclude the defendant maintained more than one place of usual abode. Streeter-Dybahl, 157 Wn. App. at 415.

Likewise here, Narin cites no facts that establish or even reasonably indicate that Abubakar centered his domestic activities at his brothers' home at any time. Even viewed in the light most favorable to Narin, the evidence in the record demonstrates only that Abubakar centered his domestic activities at a separate location, the MLK apartment. Abubakar resided there for almost three years before the attempted service. He used the MLK address to receive mail, pay bills, for his vehicle registration, his driver's license, and a job application. The only evidence before the court indicates that Abubakar never lived at the S. Holly Street address and there was no evidence that he stayed there or used the residence as a point of contact. There is no true question of fact as to whether Abubakar established that the S. Holly Street residence was not his usual abode and therefore service at that location was not valid.

Alternatively, Narin contends that service at S. Holly Street satisfied the requirements of RCW 4.28.080(17). This provision provides:

> In lieu of service under subsection (16) of this section, where the person cannot with reasonable diligence be served as described, the summons may be served as provided in this subsection, and shall be deemed complete on the tenth day after the required mailing: By leaving a copy at his or her usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof, and by thereafter mailing a copy by first-class mail, postage prepaid, to the person to be served at his or her usual

16

mailing address. For the purposes of this subsection, "usual mailing address" shall not include a United States postal service post office box or the person's place of employment.

(Emphasis added.)

But, as the trial court noted, even assuming Narin could show "reasonable diligence," there was no evidence that Abubakar used the S. Holly Street address for purposes of receiving any mail, let alone evidence that it was his "usual mailing address." The only evidence in the record demonstrated that Abubakar's usual abode and center of his domestic activities was other than at his brothers' house. With no facts indicating otherwise, the only reasonable conclusion is that his usual mailing address was also the MLK apartment address.

The trial court did not err in concluding there was no valid abode service under RCW 4.28.080(16) or service under RCW 4.28.080(17) at the defendant's usual mailing address. The trial court did not err in granting summary judgment.

Affirmed.

_____

WE CONCUR:

_____     _____

Mann, ACJ