[No. 66954-1-I.   Division One.   October 22, 2012.]

*In the Matter of the Estate of* MICHAEL J. FITZGERALD.

MARIA LUISA DE LA VEGA FITZGERALD, *as Personal Representative, Respondent,* v. MOUNTAIN-WEST RESOURCES, INC., *Appellant.*

438

440

*Gregory M. Miller* (of *Carney Badley Spellman PS*), for appellant.

*Jordan S. Klein* (of *Monahan & Biagi PLLC*), and *James R. Hennessey* (of *Smith & Hennessey PLLC*), for respondent.

¶1 DWYER, J. — Mountain-West Resources Inc. appeals from the superior court's determination that its creditor claims against the estate of Michael Fitzgerald (Estate) are time barred. Mountain-West asserts that the court erred by determining that it was not a reasonably ascertainable creditor without first permitting the corporation to depose the personal representative (PR) of the Estate regarding her knowledge of its claims. However, because Mountain-

West gave no indication of what evidence it hoped to uncover if given additional time to conduct such discovery, the superior court did not abuse its discretion by denying Mountain-West's request for a continuance. Nor did the court err by determining that Mountain-West had failed to present sufficient evidence to overcome the presumption— arising as a result of the PR's reasonable review of Fitzgerald's correspondence and financial records—that Mountain-West was not a reasonably ascertainable creditor. As it is undisputed that Mountain-West failed to present its claims within the time period allotted for an unascertainable creditor to do so, the superior court did not err by ruling that Mountain-West's claims were time barred. Because Mountain-West's additional contentions are also without merit, we affirm.

## I

¶2 In 2008, Tronox Worldwide LLC filed a lawsuit against Fitzgerald in Nevada. The complaint asserted several causes of action based upon allegedly fraudulent conduct by Fitzgerald during his employment as a geological engineer for the Kerr-McGee Corporation, the predecessor in interest to Tronox. This misconduct by Fitzgerald was alleged to have occurred between 1963 and 1969.

¶3 Fitzgerald passed away on August 11, 2009. Fitzgerald's will was thereafter admitted to probate in King County Superior Court, and his widow was confirmed as the PR of his estate. A notice to creditors was published in the *Seattle Daily Journal of Commerce* on October 14, 2009, October 21, 2009, and October 28, 2009. In addition, the PR performed a review of Fitzgerald's correspondence and financial records in an effort to ascertain creditors with potential claims against the Estate. The only creditor discovered by the PR was Tronox. A copy of the notice to creditors was mailed directly to Tronox's corporate headquarters in Oklahoma City on January 14, 2010.

¶4 Tronox thereafter filed a petition in King County Superior Court—as required by RCW 11.40.110—to substitute the PR as the defendant in the ongoing Nevada action. In addition, Tronox submitted a creditor claim to the Estate. Tronox explained that this claim was made in order to ensure that the corporation could maintain its action in Nevada and "to give the [PR] the opportunity . . . to allow the claim, together with costs."[1]

¶5 On October 15, 2010, the Nevada trial court dismissed Tronox's claim with prejudice pursuant to a stipulation by the parties. The order of dismissal in Nevada was signed by Tronox's attorney and counsel for the Estate. On October 28, 2010, a corresponding dismissal of Tronox's creditor claim was entered in King County, also by stipulation. The stipulation, which was entered into by Tronox "acting pro se," was signed by counsel for the Estate and by Tronox's general counsel.[2] The order was entered by a superior court commissioner.

¶6 Six days later, on November 3, 2010, the Estate received a letter from Mountain-West, a Canadian mining company based in Vancouver, British Columbia. The letter explained that Mountain-West and Tronox had entered into a written agreement to share in any proceeds from the Nevada litigation. The agreement specified that Mountain-West, in exchange for a one-half interest in potential proceeds of Tronox's claim, would pay all attorney fees relating to the litigation and indemnify Tronox for liability based upon possible counterclaims for malicious prosecution or abuse of process. The letter further stated that Mountain-West was now making a creditor claim against

---

[1] Tronox also filed a second petition seeking a determination that, in the event that the corporation's claim was rejected by the PR, the Nevada court would be deemed the proper court in which to contest that rejection. That petition is not a part of the record herein.

[2] Counsel for Tronox in Washington gave notice of his intent to withdraw prior to Tronox and the Estate entering the stipulation. Accordingly, the dismissal was signed by Tronox's corporate counsel, who, although an attorney, was not licensed to practice in Washington and had not secured pro hac vice status.

the Estate and would soon be "filing the necessary pleadings to preserve the claim."

¶7 The Estate immediately notified Mountain-West that its claims were time barred. The PR thereafter filed an affidavit stating that she had conducted a reasonable review of "[Fitzgerald's] correspondence, including correspondence received after the date of death, and financial records, including personal financial statements, loan documents, checkbooks, bank statements, and income tax returns." The PR explained that this review had occurred during the four-month period following the date of the first publication of notice to creditors. The PR stated that Mountain-West had not been ascertained as a result of the review. In addition, the Estate brought a petition under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, requesting the court to rule that any creditors not known to the PR prior to February 14, 2010, were not reasonably ascertainable and that, consequently, the claims of such creditors were time barred.

¶8 Mountain-West filed an answer to the Estate's petition on December 15, 2010, requesting that the court "refrain from deciding the present Petition on the merits until Mountain-West has had a sufficient opportunity to depose [the PR] and other relevant individuals to support the contention that [the PR] was aware of Mountain-West's claims against the decedent."

¶9 On December 16, 2010, Mountain-West formally asserted two creditor claims against the Estate. The primary claim was in the amount of $1.5 billion. This claim, which did not allege that Fitzgerald had directly injured Mountain-West, was based upon Mountain-West's interest in the potential proceeds of the Nevada litigation.[3] Mountain-West asserted that the dismissal of Tronox's claim against

---

[3] Mountain-West brought a motion to intervene in the Nevada action between Tronox and the Estate on December 6, 2010. However, because the case had been dismissed with prejudice prior to Mountain-West's application, the Nevada court denied the motion based upon the absence of an existing dispute. Although the

the Estate was invalid, and that, accordingly, this probate claim by Tronox must be deemed to remain open.

¶10 The second claim, in the amount of $150 million, was based upon allegedly fraudulent conduct by Fitzgerald during his tenure as president and chief executive officer (CEO) of Cobre Exploration Ltd., the predecessor in interest to Mountain-West. The claim alleged that Fitzgerald, in violation of his fiduciary duty to the corporation, had secreted certain Wyoming mineral claims for his own profit.[4] Although this claim asserted a direct injury to Mountain-West, the claim was not a part of the Nevada litigation and had not been disclosed to the Estate in any previous correspondence.

¶11 On January 6, 2011, a hearing on the merits of the Estate's TEDRA petition was held before a King County Superior Court commissioner. The commissioner did not grant Mountain-West additional time to conduct discovery. The commissioner determined that the PR had conducted a reasonable review of Fitzgerald's records and correspondence and that Mountain-West was not a reasonably ascertainable creditor. The commissioner ruled that Mountain-West's creditor claims were time barred pursuant to RCW 11.40.010 and RCW 11.40.051. In addition, the commissioner found that Mountain-West had received actual notice to creditors, effective January 14, 2010.

¶12 Mountain-West thereafter brought a motion for revision of the commissioner's order. The superior court denied this motion on March 4, 2011.

¶13 Mountain-West appeals.

---

Nevada trial court's order is not a part of our record, Mountain-West does not dispute that its motion was denied.

[4] After the Estate filed its petition seeking a determination that Mountain-West's claims were time barred, the corporation filed a complaint against the Estate in the United States District Court for the District of Wyoming based upon Fitzgerald's alleged misconduct as CEO of Cobre.

## II

¶14 Mountain-West first contends that the superior court erred by affirming the commissioner's denial of its request for a continuance to conduct discovery. Mountain-West asserts that, with no occasion to depose the PR, it was deprived of the opportunity to rebut the presumption that it was not a reasonably ascertainable creditor. However, Mountain-West failed to identify the relevant evidence that would be obtained during such a continuance period. Moreover, because the evidence actually presented by Mountain-West was insufficient to rebut the presumption that it was not a reasonably ascertainable creditor, the superior court did not err by determining that the corporation's creditor claims were time barred.[5]

¶15 A "reasonably ascertainable creditor" is a creditor that "the [PR] would discover upon exercise of reasonable diligence." RCW 11.40.040(1). The PR is deemed to have exercised reasonable diligence "upon conducting a reasonable review of the decedent's correspondence, including correspondence received after the date of death, and financial records, including personal financial statements, loan documents, checkbooks, bank statements, and income tax returns, that are in the possession of or reasonably available to the [PR]." RCW 11.40.040(1). The PR may evidence such a review by filing an affidavit with the court regarding the search conducted. RCW 11.40.040(3). The filing of such an affidavit creates a presumption of reasonable diligence. RCW 11.40.040(2). Moreover, any creditor not ascertained during this review is presumed to have not been reasonably ascertainable—a presumption that may be rebutted only by clear, cogent, and convincing evidence. RCW 11.40.040(2).

---

[5] "Once the superior court makes a decision on revision, 'the appeal is from the superior court's decision, not the commissioner's.'" *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004) (quoting *State v. Hoffman*, 115 Wn. App. 91, 101, 60 P.3d 1261 (2003)).

■ ¶16 Whether a creditor is reasonably ascertainable has significant implications regarding the time within which that creditor must present its claims to the estate. Where a creditor is determined to be reasonably ascertainable, the creditor is allowed 24 months from the decedent's date of death to present its claims. RCW 11.40.051(1)(b)(ii). If, on the other hand, a creditor is *not* reasonably ascertainable, the creditor must present its claims within four months after the date of first publication of notice to creditors. RCW 11.40.051(1)(b)(i). The PR may file a petition under TEDRA requesting a court to rule that "any creditors not known to the personal representative are not reasonably ascertainable." RCW 11.40.040(3).

¶17 Here, after filing an affidavit evidencing a reasonable review of Fitzgerald's records, the PR filed a TEDRA petition requesting a determination that Tronox was the only reasonably ascertainable creditor of the Estate and that the claims of all other creditors were time barred. On December 15, 2010, Mountain-West asked the court to delay ruling on this question to allow the corporation an opportunity to depose the PR in order to attempt to rebut the presumption that it was not a reasonably ascertainable creditor. The court denied this request and, on January 6, 2011, ruled that Mountain-West was not a reasonably ascertainable creditor. Because Mountain-West had failed to present its claims within the four month period following the first publication of notice, the commissioner determined that the corporation's claims were time barred.[6] This decision was affirmed by the superior court.

¶18 Mountain-West contends that the superior court erred by upholding the commissioner's denial of its request for a continuance. The corporation first asserts that discovery was mandated by TEDRA in the circumstances pre-

---

[6] Because the date of first publication of notice was October 14, 2009, Mountain-West was required to present its claims by February 14, 2010. RCW 11.40-.051(1)(b)(i). Mountain-West did not present its claims until December 16, 2010.

sented. The statute upon which Mountain-West relies states:

In all matters governed by this title, discovery shall be permitted only in the following matters:

(1) A judicial proceeding that places one or more specific issues in controversy that has been commenced under RCW 11.96A.100, in which case discovery shall be conducted in accordance with the superior court civil rules and applicable local rules; or

(2) A matter in which the court orders that discovery be permitted on a showing of good cause . . . .

RCW 11.96A.115.

¶19 Mountain-West points to the statute's use of the term "shall" as evidence of the legislature's intent that discovery is required by TEDRA where specific issues are in controversy. This argument fails.

¶20 The statute first states that discovery "shall be permitted *only*" in certain situations. RCW 11.96A.115 (emphasis added). In this context, the term "shall" indicates not that discovery is mandated in such situations, but that discovery may be had only in these particular situations and not in others. It does not indicate that discovery is always required whenever specific issues are placed in controversy. Nor is the statute's second use of the term "shall" helpful to Mountain-West's position. Again, this language indicates only that where discovery is allowed by the trial court, it must be conducted in accordance with "the superior court civil rules and applicable local rules" and not in some other manner. RCW 11.96A.115(2). There is no merit to Mountain-West's assertion that RCW 11.96A.115 "entitles" it to a continuance to conduct discovery.[7]

¶21 No Washington case has set forth the standard of review applicable to a trial court's decision to deny a

---

[7] Mountain-West does not contend, nor does the record support, that the corporation sought discovery pursuant to RCW 11.96A.115(2), which requires "a showing of good cause" before discovery may be had.

continuance to conduct discovery in a TEDRA proceeding. However, TEDRA gives the trial court "full and ample power and authority" to administer and settle all estate and trust matters, RCW 11.96A.020(1), "all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(2); *see In re Irrevocable Trust of McKean*, 144 Wn. App. 333, 343, 183 P.3d 317 (2008) (noting that TEDRA grants plenary powers to the trial court). Given this broad grant of power to trial courts by the legislature, we must accord significant deference to a trial court's decision to deny a continuance to conduct discovery in a TEDRA proceeding.

■ ■ ¶22 Indeed, even in the context of a summary judgment proceeding, we will not disturb a trial court's decision to deny a continuance absent a showing of a manifest abuse of discretion. *Lewis v. Bell*, 45 Wn. App. 192, 196-97, 724 P.2d 425 (1986). In such proceedings, where good reasons are established as to why the affidavit of a material witness cannot be timely obtained, the trial court must "accord the parties a reasonable opportunity to make the record complete before ruling on a motion for summary judgment." *Lewis*, 45 Wn. App. at 196. On the other hand, the court properly denies a continuance request where (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence, (2) the requesting party does not state what evidence would be established through the additional discovery, or (3) the desired evidence will not raise a genuine issue of material fact. *Lewis*, 45 Wn. App. at 196.

■ ¶23 In addition, where a party requests a continuance merely to seek information already provided by a declaration, the trial court does not err by denying such a request. *Farmer v. Davis*, 161 Wn. App. 420, 431, 250 P.3d 138, *review denied*, 172 Wn.2d 1019 (2011). In *Farmer*, the trial court granted summary judgment to the defendants where Farmer failed to serve a copy of the summons to a person of suitable age and discretion at Davis's place of

usual abode. 161 Wn. App. at 423. On appeal, Farmer contended that the trial court erred by denying his motion for a continuance to depose the defendants regarding Davis's usual abode. *Farmer*, 161 Wn. App. at 430. However, the defendants had already provided declarations that unequivocally stated, with supporting facts, that the place of service was not Davis's usual abode. *Farmer*, 161 Wn. App. at 431. In such circumstances, the trial court did not abuse its discretion by denying Farmer's motion for a continuance. *Farmer*, 161 Wn. App. at 431.

¶24 Here, Mountain-West requested a continuance for the purpose of deposing the PR "to support the contention that [she] was aware of Mountain-West's claims against the decedent." However, as discussed above, the PR had already submitted an affidavit evidencing that Mountain-West had not been ascertained during her review of the decedent's correspondence. As in *Farmer*, Mountain-West "offered no explanation of what potentially contradictory evidence [it] hoped to elicit" by deposing the PR. 161 Wn. App. at 431. As the commissioner noted, Mountain-West's request for discovery was "mere speculation and a fishing expedition." In these circumstances, the superior court correctly determined that Mountain-West was not entitled to a continuance.[8]

---

[8] Mountain-West suggests that the TEDRA discovery rules impermissibly limit a creditor's right of access to the courts. *See Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 216 P.3d 374 (2009). In *Putman*, our Supreme Court considered the constitutionality of a law requiring a plaintiff in a medical malpractice suit to submit a "certificate of merit" with the pleadings. 166 Wn.2d at 982-83. The court explained that "[t]he certificate of merit requirement essentially requires plaintiffs to submit evidence supporting their claims before they even have an opportunity to conduct discovery and obtain such evidence." *Putman*, 166 Wn.2d at 983. Noting that the "right of access to courts 'includes the right of discovery authorized by the civil rules,'" *Putman*, 166 Wn.2d at 979 (quoting *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991)), the court held that the certificate of merit requirement unconstitutionally limited a litigant's access to the courts. *Putman*, 166 Wn.2d at 985.

Unlike the situation in *Putman*, however, in the context of a TEDRA proceeding, no decision disposing of the creditor's claim is mandated before any discovery can be had. The trial court retains the discretion to permit discovery—in appropriate

¶25 Moreover, the superior court did not err by determining that Mountain-West had failed to demonstrate that it was, in fact, a reasonably ascertainable creditor. As noted above, upon the PR's filing of an affidavit, presumptions arise that the PR exercised reasonable diligence in reviewing the decedent's correspondence and financial records and that any creditor not discovered by the PR was not reasonably ascertainable. Here, the PR filed such an affidavit. Accordingly, Mountain-West was required to present clear, cogent, and convincing evidence in order to rebut the presumption that it was not reasonably ascertainable. RCW 11.40.040(2).

¶26 Mountain-West, however, produced no such evidence. The corporation first asserted that an investigator employed by Mountain-West had spoken to the PR by telephone. However, no affidavit by the investigator was filed with the superior court, and no evidence was presented regarding the substance or timing of this call. As the superior court properly determined, the mere existence of a telephone call, standing alone, cannot be deemed to have informed the PR of the corporation's claims. Indeed, if the alleged conversation occurred after the statutory period for conducting a documentary review had elapsed, this telephone call would be entirely irrelevant to the issue of the PR's knowledge of Mountain-West's claims.

¶27 Second, Mountain-West pointed to Tronox's action against Fitzgerald in Nevada as evidence that the PR should have been aware of Mountain-West's claims. However, Mountain-West's interest in the Nevada action was based solely upon its secret agreement with Tronox to share in potential proceeds from that litigation. As the superior court explained, this agreement was not disclosed to the PR "until long after the notice to creditors had been issued and the statutory period had run." Given Mountain-

circumstances—before determining whether the creditor's claims are time barred. Accordingly, unlike the certificate of merit requirement in a medical malpractice suit, the TEDRA discovery rules do not unconstitutionally limit a creditor's access to the courts.

West's apparent desire to keep hidden its interests in the Nevada litigation, we do not see how Tronox's claim could possibly have alerted the PR to a potential claim by Mountain-West.[9]

¶28 Finally, Mountain-West asserted that a 1999 lawsuit brought by the corporation against Fitzgerald in the Supreme Court of British Columbia should have apprised the PR of its creditor claims. However, this lawsuit was dismissed with prejudice in 2004 and, accordingly, would not tend to put the PR on notice of a continuing claim. As the superior court noted, this dismissal would instead "tend to put the PR's mind at rest that there is no further outstanding claim."

¶29 The superior court properly concluded that "[t]here really is no evidence to speak of here that indicates that Mountain-West was reasonably ascertainable." Accordingly, the court did not err by determining that Mountain-West was not a reasonably ascertainable creditor. As discussed above, as an unascertainable creditor, Mountain-West was required to present its claims within the four months following the first publication of notice to creditors. RCW 11.40.051(1)(b)(i). Mountain-West does not dispute that it failed to do so. Accordingly, the superior court did not err by concluding that Mountain-West's claims were time barred.[10]

### III

¶30 Mountain-West next asserts that Tronox's creditor claim against the Estate was improperly dismissed because

---

[9] Similarly, Mountain-West's lawsuit in Wyoming was insufficient to apprise the PR of the corporation's claims. This lawsuit was initiated by Mountain-West only after the statutory review period had run and, accordingly, does not demonstrate that Mountain-West was reasonably ascertainable at the time that the PR conducted her review of Fitzgerald's records.

[10] Because the superior court's determination that Mountain-West was not a reasonably ascertainable creditor supports the court's ultimate conclusion that the corporation's claims were time barred, we need not and do not address Mountain-West's additional argument that the superior court erred by finding that the corporation received actual notice to creditors.

the stipulation was signed by a person who was not authorized to practice law in Washington. We disagree.

¶31 We first note that "[t]he doctrine of standing generally prohibits a party from asserting another person's legal right." *Timberlane Homeowners Ass'n v. Brame*, 79 Wn. App. 303, 307, 901 P.2d 1074 (1995). Here, as the superior court commissioner properly determined, Mountain-West lacks standing to obtain relief on this claim.

¶32 However, even if Mountain-West had standing to contest the dismissal of Tronox's claim, Mountain-West's assertion fails on the merits. Although it is true that a court may strike the pleading of a corporation that is not signed by an attorney, *Biomed Comm, Inc. v. Dep't of Health, Bd. of Pharmacy*, 146 Wn. App. 929, 932, 193 P.3d 1093 (2008), where a party does not contest the lay representation in the trial court, the party waives any claim of inappropriate representation. *Finn Hill Masonry, Inc. v. Dep't of Labor & Indus.*, 128 Wn. App. 543, 546, 116 P.3d 1033 (2005). Moreover, although a corporation's *pleading* may be struck by a court, the court's *judgment* entered following such a pleading is not void. As is readily apparent from our decision in *Finn Hill*, such judgments may be upheld on appeal. 128 Wn. App. at 546.

¶33 Here, there was no challenge to the stipulation in the trial court and, as a result, any challenge to the lay representation was waived. *Finn Hill*, 128 Wn. App. at 546. Nor is the order dismissing Tronox's creditor claim with prejudice void ab initio. *Finn Hill*, 128 Wn. App. at 546. Accordingly, the trial court did not err by declining to vacate the order dismissing Tronox's creditor claim.[11]

---

[11] Mountain-West further contends that the commissioner erred by entering an order on April 18, 2011, stating that the court's January 6 order was "binding on all creditors, including, but not limited to, Steven C. Davis" and that Davis's claims against the Estate were "specifically time-barred." However, only the rights of Davis were affected by the commissioner's April 18 order. Because a vacation of this order would not benefit Mountain-West in any way, Mountain-West has no standing to argue that the order should be vacated.

## IV

¶34 The Estate requests an award of reasonable attorney fees pursuant to RCW 11.96A.150. Mountain-West contends that, because the Estate failed to set forth a request for such fees in its response brief as required by RAP 18.1(a), this request for attorney fees is untimely. However, the Estate filed a motion for leave to supplement its response brief to include a request for attorney fees prior to the date on which Mountain-West's reply brief was due for submittal. *See In re Adoption of Baby Girl Doe*, 45 Wn.2d 644, 647-48, 277 P.2d 321 (1954) ("[W]here an appellant seeks permission or leave of court to file an amended brief before respondent has filed his brief . . . the privilege is usually granted, subject to terms relating particularly to the matter of costs."). Moreover, although Mountain-West declined to address the issue of attorney fees in its reply brief, the corporation was clearly aware that the issue was being raised, and its decision to omit a discussion of attorney fees must be deemed a tactical one. The Estate's supplement consisted of a single page of text, placing the total length of its responsive briefing well within the 50 page limit set forth by RAP 10.4(b). Finally, although Mountain-West notes that our court clerk had informed the parties that no additional extensions for filing would be permitted, it is likely that such a request would have been granted in light of the timing of the Estate's motion. Accordingly, we grant the Estate's motion for leave to file a supplement to its response brief.

¶35 RCW 11.96A.150 grants courts great discretion in awarding attorney fees both at trial and on appeal. In this case, the superior court granted fees pursuant to this provision on the basis that "Mountain-West's behavior . . . in asserting a claim that was plainly time-barred . . . required the PR and the estate to . . . bring [a] petition" to defend against the claim. Accordingly, attorney fees for the Estate were "manifestly appropriate." This same logic applies with

equal force on appeal. Mountain-West's assertions were rejected by both the commissioner and the superior court. Nevertheless, the Estate has once again been forced to incur attorney fees to defend against Mountain-West's meritless claims. The Estate is entitled to an award of reasonable attorney fees. The commissioner of our court will make an appropriate award upon a proper application.

¶36 Affirmed.[12]

BECKER and APPELWICK, JJ., concur.

Reconsideration denied November 30, 2012.

Review denied at 177 Wn.2d 1014 (2013).

---

[12] At oral argument, Mountain-West—for the first time—makes several assertions pertaining to the trial court's jurisdiction. However, as conceded by Mountain-West, these assertions relate to the personal jurisdiction and not to the subject matter jurisdiction of the court. "In contrast to subject matter jurisdiction, personal jurisdiction cannot be raised for the first time on appeal by a party who has made a general appearance or entered a responsive pleading which did not dispute personal jurisdiction." *Robb v. Kaufman*, 81 Wn. App. 182, 188, 913 P.2d 828 (1996). Here, the issue of personal jurisdiction was not raised by Mountain-West in its numerous appearances before the superior court commissioner and the superior court judge and, accordingly, the corporation cannot raise this issue on appeal.

Moreover, Mountain-West's assertions were not set forth as issues or discussed in Mountain-West's briefing on appeal. Unless we order otherwise, we must "decide a case only on the basis of issues set forth by the parties in their briefs." RAP 12.1(a). Thus, our Supreme Court has explained, where an issue is not raised until oral argument, it is not properly before the court and need not be considered. *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 893 n.3, 969 P.2d 64 (1998); *State v. Johnson*, 119 Wn.2d 167, 170-71, 829 P.2d 1082 (1992). Here, Mountain-West did not raise the issue of personal jurisdiction until oral argument. Accordingly, this issue is not properly before us and we do not further consider it.