

STATE OF WASHINGTON

2016 OCT 31 AM 10: 32

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| ANNA PASCUA, | ) | No. 74336-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT COLLINS and JOHN GREENWAY, Co-Personal Representatives of the Estate of Donald Sirkin, | ) ) ) | UNPUBLISHED OPINION |
| | ) | FILED: October 31, 2016 |
| Appellant. | ) | |

VERELLEN, C.J. — A personal representative who reasonably reviews the decedent's correspondence and financial records is presumed to have exercised due diligence, and any creditor not revealed in the review is presumed not to be reasonably ascertainable. Those presumptions may be rebutted by clear, cogent and convincing evidence, but a creditor's vague, general, and immaterial statements to a personal representative do not satisfy that standard. As a result, a four-month claim period applies.

Pascua argues that her statements to the personal representative soon after her father's death gave the personal representative reason to know of, or inquire further about, her sexual abuse and infliction of emotional distress claims against her father's

estate. But she made no direct or indirect mention of facts giving notice of such claims. As a consequence, she did not rebut the statutory presumptions, and her claims are barred as untimely.

We affirm the summary judgment dismissing Pascua's complaint.

## FACTS

Donald Sirkin died testate on May 2, 2014. His will includes a bequest to his daughter, Anna Pascua.

A King County Superior Court commissioner signed an order admitting Sirkin's will to probate and appointing Scott Collins and John Greenway as co-personal representatives of the estate. Collins mailed the notice of appointment and pendency of probate to Pascua on May 19, 2014.

Collins reviewed Sirkin's correspondence, including correspondence received after death, personal financial statements, loan documents, bank statements, and income tax returns. Collins published a notice to creditors in the Daily Journal of Commerce on May 12, 2014, May 19, 2014, and May 27, 2014.

Pascua submitted her creditor's claim in the amount of $5,000,000 on April 16, 2015. Pascua alleged Sirkin "sexually, physically, and emotionally abused [Pascua] since the age of four throughout [Pascua's] adolescent years."[1] Collins informed Pascua that the period for filing claims expired on September 13, 2014.

---

[1] Clerk's Papers (CP) at 66.

2

On May 18, 2015, Pascua filed a complaint alleging child sexual abuse, intentional infliction of emotional distress, negligent infliction of emotional distress, and equitable estoppel.[2]

Collins moved for summary judgment. Collins argued Pascua's claim was barred because Pascua was not a reasonably ascertainable creditor and she did not file her claim within four months after the notice to creditors had been published.

In her declaration opposing summary judgment, Pascua recounted several meetings with Collins within three months after Sirkin died. Pascua mentioned five incidents to Collins:

2.1   My father was cruel and abusive to my mother, my brother and me, and I remember discussing him hitting all of us mercilessly on a number of occasions;

2.2   My father told me that I was worthless the day I was born because I was a girl;

2.3   When Eric was 6 years old and I was 4 years old, my father appeared at our house and forced my brother and me to fly to New York City with him. My father flew first class, but we were left in coach. While in New York City, we were left in the care of the hotel babysitting service and put on city tour buses by ourselves;

2.4   I refused to allow my child to spend time around my father because of the abuse I had suffered. When my son was three or four years old, my brother went behind my back to take my son to lunch with my father. At that lunch, my father became upset at my son for playing with his silverware and as a punishment would not let him eat;

2.5   When I was between 5 and 6 years old, my father hit me in the nose so hard I thought that he had broken my nose.[3]

---

[2] The equitable estoppel claim alleges Sirkin's estate should be equitably estopped from asserting any statute of limitations, laches, or the Dead Man's Statute because his conduct was calculated to intimidate Pascua into silence.

[3] CP at 91.

Pascua's declaration did not include any mention of sexual abuse. Pascua testified that she wanted to let Collins know "just how awful" her father was and that she had a "standing invitation" to take Collins out to dinner to "tell him the complete story."[4] Pascua said, "The complete story would have included the years of sexual and emotional abuse [she] endured."[5] Collins never accepted Pascua's invitation.

The trial court granted Collins's summary judgment motion. The court concluded there was no evidence that the personal representatives had any knowledge of Pascua's alleged sexual abuse claim. The court also concluded Pascua's statements to Collins did not establish a reasonably ascertainable claim.

Pascua appeals.

## ANALYSIS

We must decide whether Pascua's declaration provided clear, cogent, and convincing evidence that she was a reasonably ascertainable creditor, resulting in a 24-month claim period. Because Pascua failed to present such evidence, we affirm.

We engage in the same inquiry as the trial court when reviewing an order of summary judgment.[6] The facts and all reasonable inferences are viewed in the light most favorable to the nonmoving party.[7] Where there are no genuine issues of material fact, summary judgment is proper and the moving party is entitled to judgment as a matter of law.[8] Mere allegations or conclusory statements unsupported by evidence are

---

[4] Id.

[5] Id.

[6] Rucker v. Novastar Mortg., Inc., 177 Wn. App. 1, 10, 311 P.3d 31 (2013).

[7] Id.

[8] Id.

not sufficient to establish a genuine issue of material fact.[9] The nonmoving party may not rely on speculation or argumentative assertions that unresolved issues remain.[10]

When reviewing a summary judgment in a civil case in which the standard of proof is clear, cogent, and convincing evidence, we "'must view the evidence presented through the prism of the substantive evidentiary burden.'"[11]

Creditors must be provided notice of the appointment of a personal representative of an estate and an opportunity to file claims against the estate.[12]

A personal representative may give notice to creditors of the decedent by (i) actual notice personally served upon the creditor or mailed to creditor's last known address,[13] or (ii) publication once each week for three successive weeks in a legal newspaper in the county in which the estate is administered.[14] Persons that have claims against the decedent must present their claims within the time specified in RCW 11.40.052 or be "forever barred" from asserting those claims against the decedent's assets.[15]

If the creditor was not given actual notice under RCW 11.40.020, two different deadlines apply for presenting a claim:

---

[9] Id.

[10] Id. (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

[11] Woody v. Stapp, 146 Wn. App. 16, 22, 189 P.3d 807 (2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S. Ct. 2505, 91 L. Ed. 2d. 202 (1986)).

[12] RCW 11.40.020.

[13] RCW 11.40.020(1)(c).

[14] RCW 11.40.020(1)(b).

[15] RCW 11.40.020(1).

(i) If the creditor *was not reasonably ascertainable*, as defined in RCW 11.40.040, the creditor must present the claim *within four months* after the date of first publication of notice;

(ii) If the creditor *was reasonably ascertainable*, as defined in RCW 11.40.040, the creditor must present the claim *within twenty-four months* after the decedent's date of death.[16]

A reasonably ascertainable creditor is one that "the personal representative would discover upon exercise of reasonable diligence."[17] The personal representative

is deemed to have exercised *reasonable diligence* upon conducting a reasonable review of the decedent's correspondence, including correspondence received after the date of death, and financial records, including personal financial statements, loan documents, checkbooks, bank statements, and income tax returns, that are in the possession or reasonably available to the personal representative.[18]

RCW 11.40.040(2) provides:

If the personal representative conducts the review, the personal representative is presumed to have exercised reasonable diligence to ascertain creditors of the decedent and any creditor not ascertained in the review is presumed not reasonably ascertainable within the meaning of RCW 11.40.051. These presumptions may be rebutted only by clear, cogent, and convincing evidence.[19]

A creditor seeking to rebut the presumptions must produce evidence indicating the creditor was reasonably ascertainable.[20]

---

[16] RCW 11.40.051(1)(b) (emphasis added).

[17] RCW 11.40.040(1).

[18] RCW 11.40.040(1) (emphasis added).

[19] RCW 11.40.040(2).

[20] Estate of Fitzgerald v. Mountain-West Resources, Inc., 172 Wn. App. 437, 450-51, 294 P.3d 720 (2012) (superior court properly concluded there "'really is no evidence to speak of here that indicates that [the creditor] was reasonably ascertainable'").

This court must determine whether, viewing the evidence in the light most favorable to Pascua, a rational trier of fact could find that she supported her claim with clear, cogent, and convincing evidence.[21]

Pascua contends she was a reasonably ascertainable creditor entitled to the 24-month claim filing period.

First, she argues Collins was required to examine "*all* evidence 'reasonably available'" to him.[22] Her argument fails. The legislature did not include the term "all" in RCW 11.40.040. There is no provision in the statute supporting such an expansive obligation. More importantly, Collins satisfied the express statutory standard by reviewing Sirkin's "correspondence, including correspondence received after death, personal financial statements, loan documents, bank statement, and income tax returns," and the review did not reveal Pascua as a potential creditor.[23] Because the review complied with RCW 11.40.040(1), Collins is presumed to have exercised reasonable diligence and Pascua is presumed not to be a reasonably ascertainable creditor.[24]

Second, Pascua argues her disclosures to Collins constitute clear, cogent, and convincing evidence rebutting the statutory presumptions. Her disclosures to Collins were vague, general, and immaterial, not supportive of her ultimate causes of action. Pascua never directly told Collins that Sirkin sexually abused her. She did not make any indirect references to sexual abuse. Pascua contends, if Collins had gone to dinner

---

[21] Woody, 146 Wn. App. at 22.

[22] Appellant's Br. at 12 (emphasis added).

[23] CP at 39.

[24] RCW 11.40.040(2).

7

with her, she would have told him "the complete story" about the years of sexual and emotional abuse she endured.[25] But there is no authority for such an expansive view of the personal representative's investigative role.

Pascua told Collins about instances of physical hitting, but she did not provide context suggesting sexual abuse or infliction of emotional distress.[26] Furthermore, the complaint before the trial court made no claim for physical battery.[27]

Several of Pascua's disclosures related to poor parenting. She told Collins about instances in which Sirkin was cruel and abusive, that he flew Pascua and her brother to New York in coach while he was in first class, and that he used hotel babysitting services and put the two children on tour buses. Based on his parenting, she did not want her son to interact with Sirkin. These examples of poor parenting are immaterial because they do not reveal claims of sexual abuse or infliction of emotional distress.

We reject Pascua's contention that her disclosures triggered a personal representative's duty to pry into undisclosed claims. The two cases from other

---

[25] CP at 91.

[26] See Saldivar v. Momah, 145 Wn. App. 365, 390, 186 P.3d 1117 (2008) ("The elements of the tort of outrage are (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) the plaintiff actually suffers emotional distress."); Kumar v. Gate Gourmet Inc., 180 Wn.2d 481, 505, 325 P.3d 193 (2014) ("A plaintiff may recover for negligent infliction of emotional distress if she proves duty, breach, proximate cause, damage, and 'objective symptomatology.'") (quoting Strong v. Terrell, 147 Wn. App. 376, 387, 195 P.3d 977 (2008)).

[27] Contrary to Collins's expansive view of the parental immunity doctrine, we note parental immunity does not apply where (i) parental conduct rises to the level of willful or wanton misconduct, or (ii) where the parent is not acting in a parental capacity. See Zellmer v. Zellmer, 164 Wn.2d 147, 188 P.3d 497 (2008); Jenkins v. Snohomish County Public Utility Dist. No. 1, 105 Wn.2d 99, 713 P.2d 79 (1986).

jurisdictions cited by the parties are not helpful in applying the Washington statutes.[28],[29]

Finally, Pascua argues that because RCW 11.40.040(1) emphasizes the review of financial records, creditors with nonfinancial claims are placed at an unfair disadvantage. But RCW 11.40.040(1) expressly requires a review of the decedent's correspondence, a likely source of information related to both financial and nonfinancial claims.

We conclude the four-month statutory time limit applied to Pascua's claim. Collins complied with RCW 11.40.040(1). Pascua failed to present clear, cogent, and convincing evidence rebutting the statutory presumptions. Pascua's claims for sexual abuse and infliction of emotional distress are barred.

Therefore, we affirm.

WE CONCUR:

---

[28] Pascua relies on Washington statutes and makes no constitutional argument.

[29] In re Estate of Austin, 389 S.W.3d 168 (Mo. 2013) (victims of sexual abuse were reasonably ascertainable creditors because the personal representative was aware of the sexual abuse allegations made by the minor children but failed to notify the children when the estate opened); American Home Assurance Co. v. Gaylor, 894 So.2d 656 (Ala. 2004) (personal representative had a duty to inquire into possibility of a claim against the estate because she was aware of the car accident that caused three deaths and approximately $14,000 in damage).