**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| GREGORY RYAN, husband, and NEREYDA RYAN, wife, individually, and on behalf of their marital community,<br><br>              Appellants,<br><br>        v.<br><br>CITY OF RENTON, a government entity; and DANIEL WIITANEN,<br><br>              Respondents. | No. 85015-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — This case arises from an automobile collision that occurred in the City of Renton (City) when Daniel Wiitanen crossed the center line of Talbot Road S. and crashed into Gregory Ryan causing Ryan injury. Gregory and Nereyda Ryan (Ryans) sued the City and Wiitanen for negligence. The Ryans contend the City was negligent in its design and maintenance of the road where the collision occurred because of missing or deficient traffic control devices. The Ryans appeal summary judgment dismissal of their claims against the City. Because the Ryans failed to present evidence that the City breached its duty to design and maintain the road in a condition that is reasonably safe for ordinary travel, we affirm.

I

In the early morning hours of March 13, 2016, Wiitanen was driving on Talbot Road S. when he crossed into the oncoming lane near the intersection with S. 55th Street and collided with a vehicle driven by Ryan. Ryan suffered injuries and was taken to a hospital for treatment. Wiitanen told responding officers of the Renton Police Department that he was tired and clearing his eyes right before the collision. Later, in an affidavit, Wiitanen stated that he fell asleep while driving and awoke to honking at the moment of the collision.

Talbot Road S. was annexed by the City from King County sometime between 1978 and 2007 and was under the control of the City at the time of the collision. The portion of Talbot Road S. at issue contained a skip/broken yellow center line of raised pavement markers (RPMs) and did not have a double yellow approach line. The lines on Talbot Road S. were designed and installed by King County. At the time of the collision, the road was in substantially the same condition as it had been since 2002.

For maintenance, the City conducted a rolling inspection of roadways every year and otherwise relied on the public and public employees to report conditions. At the time, the City used RPMs as a visual guide for channelization rather than for a "rumble strip effect" or auditory warning. Generally, RPMs were replaced every other year in the spring or summer and not until 50 percent of the RPMs were missing. The road was last inspected in winter or spring 2016.

No other known collisions occurred at the location where Wiitanen collided with Ryan. One complaint was made for Talbot Road S. related to roadway width and traffic backup issues at certain times of day because of the lack of a left turn lane. The

-2-

collision history of the intersection of Talbot Road S. and S. 55th Street provided by the City showed five incidents before the Ryan and Wiitanen collision; all of which were because of inattention, speeding, or improper turns.

In March 2019, the Ryans sued Wiitanen and the City for damages. In response, the City denied liability and asserted that its actions were a reasonable exercise of judgment and discretion by authorized public officials made in the exercise of governmental authority. After disputes over protective orders and discovery, a trial was set for November 2022 with a discovery cut off of October 10, 2022.

On September 23, 2022, the City moved for summary judgment asserting that the Ryans failed to present evidence of breach of duty and proximate cause. In response, the Ryans asked the trial court to strike summary judgment under CR 56(f) because the City failed to produce complete discovery. The Ryans also asserted summary judgment was improper under CR 56(c) because genuine issues of material fact existed as to negligence and proximate cause. The Ryans relied on an expert report prepared by traffic engineer William Neuman, PE.

On November 21, 2022, the trial court denied the Ryans' motion to continue under CR 56(f), and granted the City's motion for summary judgment dismissing the Ryans' claims against the City.

The Ryans appeal.

II

The Ryans argue that the trial court erred by failing to continue the City's motion for summary judgment under CR 56(f).[1]  We disagree.

CR 56(f) provides that the trial court may grant a continuance to permit the nonmoving party time to complete discovery.  When the nonmoving party establishes a good reason why the discovery cannot be timely obtained, the trial court may allow "'a reasonable opportunity to make the record complete before ruling on a motion for summary judgment.'"  In re Estate of Fitzgerald, 172 Wn. App. 437, 448, 294 P.3d 720 (2012) (citing Lewis v. Bell, 45 Wn. App. 192, 196, 724 P.2d 425 (1986)).  Such a continuance is properly denied where "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence, (2) the requesting party does not state what evidence would be established through the additional discovery, or (3) the desired evidence will not raise a genuine issue of material fact."  Fitzgerald, 172 Wn. App. at 448 (citing Lewis, 45 Wn. App. at 196).

We review a trial court's decision on a continuance in a summary judgment proceeding under CR 56(f) for an abuse of discretion.  Fitzgerald, 172 Wn. App. at 448. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons."  In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).  "A court's decision is manifestly unreasonable if it is

---

[1] The Ryans assign error to seven orders, including the order granting summary judgment, an order denying reconsideration, several discovery orders, and an order denying a change in the trial date. The Ryans only provide argument addressing the denial of a continuance under CR 56(f) and the order granting summary judgment.  The Ryans failed to support the other assignments of error with argument or citations to authority as required by RAP 10.3(a)(5) and we do not consider them.  Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." Littlefield, 133 Wn.2d at 47.

The trial court did not abuse its discretion. While the Ryans claimed that they needed more discovery, they failed to provide a good reason for the delay in obtaining desired evidence, failed to state what evidence would be established through more discovery, and failed to state that the desired evidence would raise a genuine issue of material fact.

Rather than address the requirements for a continuance under CR 56(f), the Ryans instead cite Magaña v. Hyundai Motor Am., 167 Wn.2d 570, 220 P.3d 191 (2009), and argue that they were repeatedly denied discovery from early June 2022 through November 2022. But Magaña does not address CR 56(f). Instead, in Magaña, the court addressed prejudice under a CR 37 sanction analysis because Hyundai improperly denied discovery related to evidence of seat back failures—the alleged proximate cause of Magaña's injury. Here, sanctions were not at issue. Instead, at issue was the Ryans' request for a CR 56(f) continuance in an already protracted lawsuit.

The trial court addressed the Ryans' concerns over discovery in its order:

Most prominently, Plaintiffs lack a good reason for the protracted delay in their obtaining the evidence they now seek. This case was filed in March of 2019. It was stayed pending an interlocutory appeal by Plaintiffs arising from the Court's denial of their requested protective order. That appeal

became final in May 2021.  A new case schedule issued in July 2021, setting a new trial date one year from then (July 2022).

In March 2022, Plaintiffs sought a further continuance.  In denying that motion, the Court ruled:

> [T]his case has been pending for more than three years.  <u>If Plaintiffs intend to prosecute this case, it is imperative for them to comply with the Court rules and prior rulings of this Court and move the case forward</u>.

On June 3, 2022, the Court held a pretrial conference.  When it became apparent at the pretrial conference that the case would not be ready for trial the following month, the Court granted an additional four-month continuance to allow the parties to finish discovery.

So far as the Court can tell, Plaintiffs propounded their first written discovery to the City in May 2022, with responses due in early June 2022.  The City timely responded, and provided supplemental responses on July 1, 2022.

At no time have the Plaintiffs ever moved to compel discovery of any kind from either defendant.  Instead, in September 2022, Plaintiffs moved for another continuance of the trial date.  Plaintiffs suggested in that motion that they had not received complete discovery responses, but provided no record supporting that assertion other than the argument of counsel and some attached emails; the sole relief sought in the proposed order was to continue the trial until at least March 23, 2023, which would have been more than four years after the case was filed.

The Court denied the motion to continue, noting the following:

> In particular, no party has brought any discovery issues before the Court since the pretrial conference on June 3, 2022, despite having had nearly four months to do so.  The discovery cut off is October 10, 2022.  At this stage, if evidence was responsive to but not produced in discovery, it may be subject to exclusion at trial, or other pretrial remedies may be appropriate.

After this order was entered, Plaintiffs then sought a renewed CR 30(b)(6) deposition of the City.  The City sought a protective order due to the short notice and the substantial number of topics in the notice, the same issues that had previously resulted in the deposition being deferred.  The Court granted the motion for protective order in part, allowing Plaintiffs to

No. 85015-6-I/7

conduct the deposition after the discovery cut off on reasonable notice and after resolving objections to the scope of the notice. Plaintiffs also apparently sought the deposition of Defendant Wiitanen, although that issue was not brought before the Court.

Following the Court's rulings, Plaintiffs' counsel continued emailing the Court's bailiff attempting to raise substantive issues regarding discovery by email. On October 21, 2022, the bailiff sent a reply email to Plaintiffs' counsel including the following:

> The Court is not able to address substantive issues over email and without an opportunity for all parties to be heard.
>
> If the plaintiffs are seeking to compel discovery, that needs to be done by motion. The Court notes that the discovery cut off has passed so the plaintiffs would need to include a request for leave of court explaining why the motion should be heard after the cut-off date and why a motion was not timely made earlier.
> * * *
> There is a pretrial conference set for November 4; if the plaintiffs want to file motions they could note them for the normal course on that day.

Plaintiffs did not file a discovery motion, a point which arose again during oral argument on the motion for summary judgment on November 4, 2022. Overall, the Court has afforded Plaintiffs copious opportunities to complete discovery and to file motions to compel discovery if necessary, but to date Plaintiffs have not done so, and trial is set for one week from today (November 28, 2022).

Finally, the Court notes that Plaintiffs' counsel in his declaration does not identify how specific evidence he seeks would create a disputed issue of material fact. He simply asks for more time to conduct additional discovery based on the CR 30(b)(6) deposition testimony.

(Internal citations omitted).

The trial court did not abuse its discretion in denying the Ryans' CR 56(f) motion

for a continuance.

III

The Ryans argue the trial court erred in granting summary judgment because there were sufficient facts to support that the City was negligent in the design and maintenance of Talbot Road S. by failing to (1) maintain RPMs between the south end of terminus of the center turn lane ("gore point") and the intersection with S. 55th Street; (2) failing to install a double yellow center line with RPMs (approach lane) between the gore point and S. 55th Street; and (3) failed to follow channelization standard or uniformity of intersection standards.  We disagree.

We review summary judgment orders de novo and perform the same inquiry as the trial court.  Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005).  We view all facts and reasonable inferences in the light most favorable to the nonmoving party—in this case, Ryan.  Owen, 153 Wn.2d at 787.  Summary judgment is proper if the record before the trial court establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR 56(c).  "A material fact is one that affects the outcome of the litigation."  Owen, 153 Wn.2d at 789.  "If reasonable minds can differ, the question of fact is one for the trier of fact, and summary judgment is not appropriate."  Owen, 153 Wn.2d at 788.  The moving party may support its motion for summary judgment by challenging the sufficiency of the plaintiff's evidence on any material issue.  Las v. Yellow Front Stores, Inc., 66 Wn. App. 196, 198, 831 P.2d 744 (1992).  If the plaintiff fails to show the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, then the moving party is entitled to

judgment as a matter of law and the trial court should grant the motion. Young v. Key Pharms., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

"Negligence requires proof of four elements: (1) the existence of a duty to the person alleging negligence, (2) breach of that duty, (3) resulting injury, and (4) proximate cause between the breach and the injury." Nguyen v. City of Seattle, 179 Wn. App. 155, 164, 317 P.3d 518 (2014).

Generally, municipalities are held to the same negligence standards as private parties. RCW 4.96.010; Keller v. City of Spokane, 146 Wn.2d 237, 242-43, 44 P.3d 845 (2002). "Whether a municipality owes a duty in a particular situation is a question of law." Keller, 146 Wn.2d at 243. A municipality "owes a duty to all persons, whether negligent or fault-free, to build and maintain its roadways in a condition that is reasonably safe for ordinary travel." Keller, 146 Wn.2d at 249. "A city's duty to eliminate an inherently dangerous or misleading condition is part of the overarching duty to provide reasonably safe roads for the people of this state to drive upon." Owen, 153 Wn.2d at 788.

But a municipality need not update every road to present-day standards. Ruff v. County of King, 125 Wn.2d 697, 705, 887 P.2d 886 (1995). "Nor does the duty require a [municipality] to anticipate and protect against all imaginable acts of negligent drivers for to do so would make [the municipality] an insurer against all such acts." Ruff, 125 Wn.2d at 705 (citations and internal quotations omitted).

Notice is required unless the municipality created the dangerous condition or reasonably anticipated it would develop:

Actual or constructive notice of a dangerous condition is an essential element of the duty of reasonable care. But the notice requirement does not apply to dangerous conditions created by the governmental entity or its employees or to conditions that result from their conduct. Nor is notice required where the City should have reasonably anticipated the condition would develop.

Nguyen, 179 Wn. App. at 165 (citations and internal quotations omitted). Put another way, a "plaintiff is not required to prove notice only if the government entity created the unsafe condition directly through its negligence, or if it was a condition it should have anticipated." Helmbreck v. McPhee, 15 Wn. App. 2d 41, 53, 476 P.3d 589 (2020).

The standard for public highways in Washington State is in the 2009 edition of the Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD). RCW 47.36.020; WAC 468-95-010. Cities are required to equip certain primary, secondary, and connecting streets with traffic control devices. RCW 47.36.060. The MUTCD requires that center lines be used to delineate the separation of traffic lanes traveling in opposite directions of travel in three possible configurations: (1) two direction passing zone markings of a normal broken yellow line, (2) one direction no passing markings of double yellow lines, one of which is broken, and (3) two direction no passing markings of two solid yellow lines.[2] Washington has modified the MUTCD so that RPMs may be substituted for pavement markings as follows:

If raised pavement markers are substituted for broken line markings, a group of 3 to 5 markers equally spaced at no greater than N/8 (see Section 3B.11), or at the one-third points of the line segment if N is other than 40 feet, with at least one retroreflective or internally illuminated marker used per group.

_____

[2] Although the MUTCD was adopted in its entirety, the code reviser determined not to publish every regulation in the MUTCD. WAC 468-95-010. The MUTCD provision cited is not in the published code, but is in our clerk's papers.

WAC 468-95-210. According to the 2015 Washington State Department of Transportation Design Manual, RPMs have a service life of two years and provide good wet night visibility and a rumble effect.

Here, the state of the RPMs making up the single yellow broken line on Talbot Road S. at the time of the collision is unclear. The City denied that any RPMs were missing at the time of the collision and noted that RPMs were being phased out in favor of reflective paint. But the City acknowledged that RPMs have to be replaced every other year and that those replacements occur typically in the spring and summer months. The portion of the road was inspected sometime in the winter or spring of 2016, so likely sometime in the few months before or following the collision. Viewing these facts in favor of the Ryans, we assume that some RPMs were missing on Talbot Road S. at the time of the collision.

But the Ryans fail to present adequate evidence to establish the City breached its duty of care. The Ryans rely mainly on the testimony of Neuman to assert that the City should have replaced missing RPMs and placed a double strip of RPMs in the approach to S. 55th Street. Neuman points to three "defects" of pavement markings: (1) lack of double yellow RPMs south of the gore point, (2) failure to use uniform markings consistent with those on S. 55th Street, and (3) poorly maintained RPMs on the date of the accident. But the Ryans present no evidence that the City was required to make such improvements, inspect Talbot Road S. more often, or replace RPMs more often than once every other year. The City did not design Talbot Road S. and was not required to update the road even if the standard or guideline in 2016 called for a double strip of RPMs in the approach to the intersection. Ruff, 125 Wn.2d at 706. Neuman's

belief that the road markings were defective, without more, is insufficient to create a genuine issue as to whether the City breached its duty to maintain Talbot Road. S. in a manner reasonably safe for ordinary travel.

Without a complaint of missing RPMs or notice of a dangerous condition due to center line visibility or confusion, the City's duty cannot reasonably include inspection of this portion of Talbot Road S. more often than it already does or replacement of each RPM at the moment it wears out or goes missing. The only complaint made about this particular section of road related to traffic back up issues at certain times of day that led to cars driving on the shoulder to bypass cars waiting to turn. That complaint cannot create a genuine issue as to whether there was a dangerous or misleading condition related to RPMs and the center line visibility. Further, the collision history shows that all other documented incidents in the two years before this collision occurred at the intersection and were because of inattention, speeding, or illegal turns—and were not because of missing RPMs, lack of a rumble effect, or impaired center line visibility.

Thus, the Ryans fail to present evidence creating a genuine issue of material fact that the City designed or maintained the road in an unsafe manner or was on notice or should have been aware of a dangerous or misleading condition created by missing RPMs or the existing design. Summary judgment and dismissal in favor of the City was not error.

We affirm.

WE CONCUR:

_Mann, J._

_Chung, J._

_Brennan, J._